**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION et al., Appellants,**

**v.**

**SOUTH–EAST COAL COMPANY, Appellee.**

Court of Appeals of Kentucky.

April 23, 1965.

Paul E. Tierney, Benjamin J. Mann, Melbourne Mills, Jr., Frankfort, for appellant, Kentucky Unemployment Ins. Commission.

Grant F. Knuckles, Pineville, Henry B. Noble, Hazard, for individual appellants.

J. K. Wells, Paintsville, for appellee, South-East Coal Co.

Louis Cox, John Hopkins, Hazelrigg & Cox, Frankfort, for Kentucky Coal Assn., amicus curiae.

STEWART, Judge.

This appeal is from a judgment of the Franklin Circuit Court holding that a certain work stoppage was a strike and not a lockout within the purview of KRS 341.360 (1).

The facts in this case are not in dispute. For some time prior to January 4, 1962, there existed an agreement between appellee, South-East Coal Company, and the United Mine Workers of America (herein referred to as "UMWA"). This agreement contained a clause to the effect that it could be terminated after the passage of sixty days from the giving of notice. Pursuant to this clause, appellee on January 4, 1962, notified the UMWA and each of the claimant-appellants herein, 114 of them, of its unwillingness to be bound by its agreement sixty days after the notice.

This notice also contained an offer to meet and negotiate with the UMWA's bargaining representative; stated that appellee fully respected the right of the claimant-appellants to belong to a labor organization and to bargain collectively; proposed certain provisions to be set forth in a new agreement; and offered continued employment under the terms and conditions to be contained in the new agreement, in the event no new agreement was reached by March 4, 1962. The latter date was the day on which the old agreement, in accordance with the notice given, ceased to be effective.

Appellee offered wages the same as those received under the terminated agreement, but for a day of eight hours as contrasted with a day of seven and one-half hours portal to portal. Overtime pay was to start after the eighth hour each day; and with the forty-first hour each week instead of the thirty-sixth. It agreed to furnish medical and life insurance in lieu of payments to the welfare fund and a stipend for vacation.

The claimant-appellants did not accept appellee's offer of continuing employment under the terms and conditions tendered for incorporation into a new agreement. Rather, they chose to stand pat upon the UMWA contract. A cessation of work ensued and the claimant-appellants became unemployed.

In passing upon their claims for unemployment compensation, payment for which could only be allowed the claimant-appellants if their unemployment resulted from a lockout, the Kentucky Unemployment Insurance Commission concluded as a matter of law that the terms and conditions offered by appellee were so "onerous" as to justify the rejection of them by the claimant-appellants.

This decision of the Commission was a holding that a lockout caused the unemployment, and that the claimant-appellants were entitled to receive unemployment benefits. Upon appeal to the circuit court, this ruling was reversed.

This Court first defined a strike and a lockout in the case of Barnes v. Hall, 285 Ky. 160, 146 S.W.2d 929, 936. The opinion stated in that case: "A strike is cessation of work by employees in an effort to get for the employees more desirable terms. A lockout is a cessation of the furnishing of work to employees in an effort to get for the employer more desirable terms." In Detroit Harvester Co. v. Kentucky Unemployment Insurance Commission, Ky., 343 S.W.2d 365, 367, the definition of a lockout was extended. This Court there said: "[A] lockout is the independent action of the employer in refusing to furnish work for the coercive purpose of compel-

ling the employee to accept terms or make concessions favorable to the employer."

In the recent case of D. J. B. Collieries Company v. Kentucky Unemployment Insurance Commission, Ky., 385 S.W.2d 772, the employer ceased its mining operation under its UMWA agreement with its employees and set forth new terms and conditions with no alternative except to work on those it offered. Furthermore, it threatened to operate on a non-union basis if its employees refused to return to their jobs under the new terms and conditions it specified. The employees quit their work and, despite the ultimatum character of the offer made by the D. J. B. Collieries Company as a basis for hiring them back, this Court held the employees had called a strike.

In the instant case it appears appellee's conciliatory proposal was intended as a lead toward negotiating a new work agreement. It had an undoubted right to resort to this course of action after, upon proper notice, it had abrogated its UMWA agreement. The claimant-appellants refused to negotiate and insisted the UMWA agreement should remain in full force and effect until they and appellee could arrive at a new contract.

The Commission made this pertinent finding: "That the company has been placed in an unfavorable competitive position and must reduce costs to survive is undenied in this record. Willing workers and a reasonable employer have reached an impasse because of the rigidity of a national trade agreement which apparently cannot or may not be modified to fit local conditions."

The action of the claimant-appellants in refusing to discuss *any* new working terms in the face of appellee's willingness to continue operations in the manner heretofore described, while negotiations were under way, placed full blame on them for the work stoppage. Thus their action amounted to a strike and accordingly they must be denied unemployment benefits.

Wherefore, the judgment is affirmed.